COUNTY OF ST. LOUIS, EX REL. WALTER SCOTT, APPELLANT, v. MARVIN PLANING MILL COMPANY, A CORPORATION, RESPONDENT.—58 S. W. (2d) 769.

St. Louis Court of Appeals. Opinion filed April 4, 1933.

Motion for rehearing denied April 14, 1933.

*Ralph, Nolan, Rush & Brown* for appellant.

1050

*Seneca C. Taylor* for respondent.

McCULLEN, J.—This is a suit brought by appellant (hereinafter called plaintiff), against respondent (hereinafter called defendant), to enforce the lien of a special tax bill issued by the County Court of the County of St. Louis, Missouri, for the improvement of Ella Avenue, a public roadway in said county. Defendant filed a demurrer to plaintiff's petition on the ground that it appeared upon the face thereof that plaintiff's action was barred by the Statute of Limitations. The court sustained defendant's demurrer. Plaintiff refused to plead further and judgment was rendered in favor of defendant. Plaintiff brings the case here by appeal.

Plaintiff's petition was filed in the Circuit Court of the County of St. Louis, on February 24, 1931. The petition at that time named Marvin-Hay Mill Works Company, a corporation, as defendant. Thereafter, on February 27, 1931, plaintiff, by leave of court, amended the petition by interlineation, changing the name of defendant from "Marvin-Hay Mill Works Company" to "Marvin Planing Mill Company," at the same time dismissing the cause as to Marvin-Hay Mill Works Company.

The petition alleged that Ella Avenue was a public roadway in the County of St. Louis, Missouri; that said county contained more than seventy-five thousand inhabitants and that the roadway was located in an unincorporated residence district; that defendant was a corporation and the owner of record of the real estate described in the petition and that plaintiff was the owner and holder of special

tax bill No. 719 issued by the County of St. Louis on February 25, 1926, to the Blackburn-Cream Construction Company and assigned by said company to plaintiff.

The various steps were alleged by which the county court made provisions for constructing sidewalks and roadway along Ella Avenue, the letting of contracts for such improvements, the completion of the work, the approval and acceptance thereof by the county court and then alleged that:

"Thereafter and on the 26th day of February, 1926, the said county court, by an order duly made and entered of record, directed the issuance of the special tax bill above referred to against Lots 20, 21 and 22 of Block 24 of Watson's Fruit Hill Subdivision having an aggregate frontage on the said Ella Avenue of seventy-five (75') feet in the sum of four hundred seventy-four and twenty-five hundredths ($474.25) dollars for the roadway, forty-six and forty-nine hundredths ($46.49) dollars for curbing, and seventy-two ($72) dollars for sidewalks, making an aggregate total of five hundred ninety-two and seventy-four hundredths ($592.74) dollars, and the said tax bill providing that it would bear interest at the rate of eight per cent per annum thirty days after its date and until paid, and that said tax bill No. 719 was thereupon duly issued, registered and attested and delivered to the contractor therefor and became due and payable on the 25th day of March, 1926."

It was also alleged in the petition that defendant had made a payment on December 31, 1930, of $200 on account of the principal of said special tax bill and that the balance of principal and accrued interest were unpaid.

Defendant's demurrer to the petition is as follows:

"Comes now the defendant and demurs to the petition of the plaintiff herein and for ground of demurrer says that said petition does not state facts sufficient to constitute a cause of action in that it appears upon the face of said petition that the plaintiff's cause of action, if any he has, accrued more than five years before the commencement of this suit, and has become completely barred by the Statute of Limitations."

Counsel for plaintiff contend that the court should have overruled the demurrer and present several reasons to support their position.

The pertinent part of Section 7922, Revised Statutes of Missouri, 1929 (Mo. St. Ann., sec. 7922) upon which the special tax bill in question is founded provides as follows:

"Said special tax bills are to be issued upon the completion, approval and acceptance by the county courts, and may bear interest, after thirty days, at the rate of eight per cent per annum, and every such special tax bill shall be a lien against the lot or piece of ground described in the same until the same is paid."

Section 860, Revised Statutes of Missouri, 1929 (Mo. St. Ann., sec. 860), provides that:

"Civil actions other than those for the recovery of real property can only be commenced within the periods prescribed in the following sections after the causes of action shall have accrued  .  .  ."

Section 862, Revised Statutes of Missouri, 1929 (Mo. St. Ann., sec. 862), names various actions which can only be commenced within five years. The second subdivision thereof is as follows:

"An action upon a liability created by a statute other than a penalty or a forfeiture."

It is conceded by counsel for the respective parties that the above quoted portion of the last-mentioned statute is applicable to this case, but they do not agree as to when the five-year period began to run. Counsel for plaintiff urge that the five-year period did not begin to run until thirty days after the date of the issuance of the tax bill. Counsel for defendant insists that it began to run from the date of issuance. There being no limitation expressed in Section 7922, Revised Statutes of Missouri, 1929 (Mo. St. Ann., sec. 7922), the statute upon which the special tax bill is founded, and it being conceded that the action herein is "upon a liability created by a statute," the general five-year Statute of Limitations applies. [Koch v. Shepherd (Mo. App.), 193 S. W. 601.] In determining whether or not the five-year Statute of Limitations has run its course so as to constitute a bar in this case, we must first determine the meaning of the statute upon which the special tax bill is founded and the purpose sought to be accomplished by the Legislature through the enactment thereof. .

In Lumber Co. v. Railroad, 216 Mo. 658, l. c. 672, our Supreme Court in construing a statute said:

"Nor should we give the statute such construction as would make it unreasonable and absurd, for it is to be presumed that such was not the legislative intent."

In the same case the court quoted with approval from Thompson v. State, 20 Ala. l. c. 62, wherein it was said that in construing a statute the court is often required:

"To look less at the letter or words of the statute than at the context, the subject-matter, the consequences and effects, and the reason and spirit of the law, in endeavoring to arrive at the will of the law giver."

In St. Louis v. Christian Brothers College, 257 Mo. 541, 552, 165 S. W. 1057, the court said:

"On this point we will say that in construing laws it is permissible in arriving at the intent of the law maker to either expand or limit the meaning of his words when it becomes necessary to make the law harmonize with reason. [Kane v. Railroad, 112 Mo. 34, l. c. 39; Keeney v. McVoy, 206 Mo. 42, l. c. 68.]

"The rule of reason is quite firmly rooted in the jurisprudence of our State and can be traced back to the early case of Fanny v. State, 6 Mo. 122, l. c. 142. In the case of State ex rel. v. Railroad, 105 Mo. App. 213, SMITH, J., in speaking for the Kansas City Court of Appeals said: 'The reason of the law should prevail over its letter and general terms should be limited in their application so as not to lead to injustice, oppression or an absurd consequence, the presumption being that the Legislature intended no such anomalous results.'"

If it should be held that the Statute of Limitations began to run in this case from the date of the issuance of the special tax bill, such a construction would be contrary to what appears to have been the intention of the Legislature in granting a thirty-day period of grace to the landowner, and would have the effect of subjecting a landowner to a suit by the holder of such a tax bill even within the thirty-day period and before interest on the tax bill began to accrue. It is evident that it was the intention of the Legislature to permit the landowner to be and remain free from the penalty of interest during the thirty-day period, provided the county court (as it did in this case) should take advantage of the permission given in the statute to allow such thirty-day period.

It is not reasonable to suppose that the Legislature, while manifesting a clear intention to avoid for a thirty-day period the imposition of a penalty in the form of interest, also intended at the same time to permit the imposition of another and perhaps heavier form of penalty by leaving the landowner subject to a suit upon a special tax bill immediately upon the issuance of such tax bill and during such thirty-day period of grace, with all the costs and expenses which attend such a suit.

We do not believe that the Legislature intended to create any such illogical, absurd and unreasonable situation. On the contrary, it appears from the statute that it was the intention of the Legislature to offer to a landowner, freedom from penalties as an inducement to the prompt payment of the special tax bill and to accomplish this purpose it provided for a thirty-day period of grace during which the tax bill could be paid without penalty.

It is clear that the Legislature, by making a provision in the statute for a thirty-day period following the isspance of a special tax bill during which the owner of the land against which the bill is issued, might be free from the payment of interest, intended thereby to give and unquestionably did give the county court authority to grant the landowner a valuable right. It is not to be presumed that the Legislature intended to give the owner of the land such a valuable right and yet permit him to be subject to a suit and its attendant costs within that same period for his failure to pay the tax bill on the date of its issue.

The existence of a lien beginning to run from the date of the issuance of such a special tax bill is not at all inconsistent with a thirty-day period of grace during which the landowner shall be free from the possibility of the enforcement of such lien against his land. A reasonable construction of the statute in question leads inevitably to the conclusion that it was the intention of the Legislature to do both of these things, namely, to provide for the creation of a lien beginning as of the date of the issuance of the special tax bill, and to suspend the enforcement of such lien for a period of thirty days thereafter during which period no interest should accrue.

Giving to the statute the meaning which appears to have been the intention of the Legislature we hold that the right to bring a suit for the enforcement of the lien of the special tax bill in this case did not accrue until thirty days after the date of its issuance.

In Boyd v. Buchanan, 176 Mo. App. 56, 58, 162 S. W. 1075, the court said:

"The statute . . . declares that limitation will begin to run when 'the cause of action shall have accrued' and we have decided at this term that a cause of action has accrued when a right exists to institute a suit for its enforcement."

In Beard v. Citizens Bank of Memphis (Mo. App.), 37 S. W. (2d) 678, it was said:

"The Statute of Limitations begins to run from the time when a complete cause of action accrues, that is when a suit may be maintained." [See also 17 R. C. L. 748, 749; 37 C. J. 807, 810; Shrabauer v. Schneider, 224 Mo. App. 304, 25 S. W. (2d) 529; State ex rel. Fehrenbach et al. v. Logan et al., 195 Mo. App. 171, 190 S. W. 75.]

The situation in this case is not unlike the period of grace granted to landowners against whose land general taxes have been assessed. Such general taxes become due and payable on the first day of September of the particular year involved, but they do not become delinquent and subject to penalties until January first of the following year. In a suit brought by the collector of revenue of the City of St. Louis to collect certain taxes on real estate in that city, one of the contentions was that the suit was barred by the Statute of Limitations. The court held that no right of action accrued until the taxes were assessed and had become delinquent, and although the assessment was made in 1896, the Statute of Limitations did not begin to run until January 1, 1897, when the tax became delinquent, and that the suit was not barred by the Statute of Limitations. [State ex rel. v. Vogelsang, 183 Mo. 17, 81 S. W. 1087.]

Plaintiff's petition in the case at bar contained an allegation that the special tax bill in question was "duly issued, registered and attested and delivered to the contractor therefor, and became due and payable on the 25th day of March, 1926."

We do not agree with the contention of counsel for defendant that the language quoted pleaded a conclusion. We are of the opinion, in view of what we have said herein, that it was an allegation of an ultimate issuable fact which, under the demurrer of defendant, was admitted to be true.

From the face of the petition it appeared that the suit was filed within the five-year period of the Statute of Limitations. It also appeared that the amendment changing the name of defendant was made within that period. The court should have overruled the demurrer.

In this view of the case it is not necessary for us to pass upon other points raised. The judgment should be reversed and the cause remanded. It is so ordered. *Becker, P. J.,* and *Kane, J.,* concur.