**CITY OF COLUMBIA, a Municipal Corporation, ex rel. EXCHANGE NATIONAL BANK, a Corporation, Respondent,**

v.

**JOHNSON INVESTMENT AND RENTAL COMPANY, a Corporation, Appellant,**

and

**Missouri Concrete Company, a Corporation, N. R. Garrett and N. R. Garrett, Jr., Individually and d/b/a Missouri Concrete and Billy Boyce, individually and d/b/a Boyce Construction Company, Respondents.**

No. 25354.

Kansas City Court of Appeals, Missouri.

Oct. 5, 1970.

Motion for Rehearing and/or Transfer to Supreme Court Denied Dec. 7, 1970.

Application to Transfer Denied Feb. 8, 1971.

Terrence C. Porter, Columbia, for appellant Johnson Inv. Co.

Robert C. Smith, David B. Rogers, Smith, Lewis & Rogers, Columbia, for respondent Exchange National Bank.

BROADDUS, Special Commissioner.

This action commenced on November 9, 1966, is in three counts, each on a tax bill issued by the City of Columbia, Missouri, a constitutional charter city. The tax bills are for the grading, paving, curbing and otherwise improving Pershing Road in said city. The plaintiff, Exchange National Bank is the owner of the tax bills by assignment. Defendant Johnson Investment and Rental Company is the owner of the land abutting the improved street. Defendants, Missouri Concrete Company, N. R. Garrett and N. R. Garrett, Jr., and Billy Boyce were the contractors who made the street improvement and subsequently assigned the tax bills to the plaintiff.

The action seeks a judgment in rem to enforce the lien of the tax bills against the property owned by the appellant Johnson Investment and Rental Company. Appellant defends on the ground that plaintiff's suit was not timely filed and the action is barred by limitation.

On the 6th day of February, 1961, the City Council of Columbia adopted a resolution declaring the necessity of paving Pershing Road and setting forth the specifics in the improvement of providing for the required publication.

On April 13, 1961, the Council enacted an ordinance approving and adopting the plans and specifications for the street and directing that advertisement be made for bids and providing that the work should be paid for by special tax bills. Pursuant to such ordinance, the respondent Billy Boyce was named as contractor on May 15, 1961.

On October 2, 1961, the City Council enacted an ordinance to accept the work performed by respondent Boyce under written contract and enacted an ordinance to levy and assess a special tax for the construction of the street and authorized the issuance of special tax bills against the property of the appellant as follows:

Tax Bill No. 4290—$4307.41
Tax Bill No. 4294—$ 833.69
Tax Bill No. 4296—$1250.54

The three tax bills provide in part as follows:

"This tax bill shall draw interest after thirty days from date of issuing the same at the rate of eight (8) percent per annum until paid.

"This tax bill is a special lien against the land herein described and said lien shall continue for a period of five (5) years from date hereof, unless sooner paid; in case of Tax Bills payable in installments the lien shall not expire until one (1) year after the date of the maturity of the last installment."

It was stipulated that each of the tax bills assessed against the appellant's property was actually issued by the City of Columbia on the 10th day of October, 1961. It was further stipulated that this action was filed on November 9, 1966.

Appellant's first contention is that the judgment should be reversed because the trial court erred in failing to apply the provisions of Section 516.120 RSMo 1959 relating to limitations of action, as a complete bar to plaintiff's claim for the reason that the plaintiff's action was instituted more than five years after the obligations of the special tax bills were created.

The special tax bills upon which the instant action is based were issued on October 10, 1961. Suit was filed on November 9, 1966. The enabling provision of Columbia's charter provides:

"Such tax bills shall mature at such times and bear such rate of interest as may be prescribed by the ordinance directing the issuance thereof,"

and the pertinent ordinance provision provides:

"All special tax bills shall bear no interest for thirty days after the date of issue thereof, *at which time such tax bills shall be due and payable,* and after the expiration of such thirty days, they shall bear interest at the rate of eight percent (8%) per annum * * *." (Emphasis added)

The Charter provision quoted above leaves to Ordinance the terms of the tax bills and the Ordinance quoted above states that the tax bills shall become due and payable thirty days from the date of issue. There is certainly no irreconcilable difference between the two, and as a matter of fact, they complement each other. Since the tax bills were issued October 10, 1961, they became due and payable November 10, 1961. The precise question raised in the case at bar was raised in St. Louis County ex rel. Scott v. Marvin Planing Mill Company, 228 Mo. App. 1048, 58 S.W.2d 769 (St.L.Ct.App.). In that case the special tax bills were issued on February 25, 1926 and suit was effectively filed on February 27, 1931. The special tax bills there also contained a thirty day grace period before which interest did not begin to accrue. The defendant contended that the suit was barred by the running of the five year statute of limitations which was the predecessor of Section 516.120 RSMo 1959. The court held that the suit was not barred by limitations, reasoning that the special tax bill obligation was not matured until the end of the thirty days grace period and thus limitations did not begin to run until that time. The court stated 58 S.W.2d l. c. 771:

"The existence of a lien beginning to run from the date of the issuance of such a special tax bill is not at all inconsistent with a thirty-day period of grace during which the landowner shall be free from the possibility of the enforcement of such lien against his land. A reasonable construction of the statute in question leads inevitably to the conclusion that it was the intention of the Legislature to do both of these things, namely, to provide for the creation of a lien beginning as of the date of the issuance of the special tax bill, and to suspend the enforcement of such lien for a period of thirty days thereafter during which period no interest should accrue.

"Giving to the statute the meaning which appears to have been the intention of the Legislature, we hold that the right to bring a suit for the enforcement of the lien of the special tax bill in this case did not accrue until thirty days after the date of its issuance."

In a similar case, the St. Louis Court of Appeals had before it the question of when the statute of limitations begins to run on the obligation to pay earnings taxes due to the City of St. Louis. State of Missouri ex rel. Collector of Revenue of City of St. Louis v. Robertson, 417 S.W.2d 699. There the Collector of Revenue of the City of St. Louis filed suit on April 15, 1965 for the recovery of delinquent city earnings taxes for the years 1955 through 1958. Under the enabling statute, a St. Louis resident was required to file his earnings tax return on the 30th day of March following the year that the wages were earned and at the same time, was required to pay the tax due thereon. All parties conceded that Section 516.120 RSMo 1959 applied. The court held that the statute of limitations commenced running when the claim for relief had accrued and when a right existed to institute suit for the delinquent taxes; and that since the taxes were first due on the 30th day of March following each of the years for which taxes were claimed respectively, that the statute of limitations would run from that date. The court stated 417 S.W.2d l. c. 700:

"Unquestionably, we must consider a long line of decisions 'that the statute of limitations will begin to run only when the cause of action, or more precisely, the claim for relief, shall have accrued and * * * *that a claim for relief has accrued when a right exists to institute a suit for its enjoyment.*' Boyd v.

Buchanan, 176 Mo.App. 56, 162 S.W. 1075; also Beard v. Citizens' Bank, Mo. App., 37 S.W.2d 678, 679. In tax cases, the claim for relief is held to have accrued when the taxes have been assessed and have become delinquent. State ex rel. Hawkin v. Edwards, 315 Mo. 209, 286 S.W. 25 and St. Louis County ex rel. Scott v. Marvin Planing Mill Co., 228 Mo.App. 1048, 58 S.W.2d 769." (Emphasis added)

Similar reasoning has been applied in the application of the statutes of limitations to breach of contract cases. The rule in such cases is that the limitations period begins not as of the date the contract was executed, but rather as of the date of the breach. The reasoning is that it is the breach, not the execution of the contract, which gives rise to a cause of action, and that the statute of limitations does not begin to run until a cause of action accrues. See Baron v. Kurn, 349 Mo. 1202, 164 S.W.2d 310, where in regard to the application of the statute of limitations to an action for breach of contract, the Supreme Court stated:

"They constitute a personal privilege in the debtor to say the debt is stale to a creditor responsible for the hardship entailed. They bar the remedy, not the obligation. The obligation of a contract and the remedy to enforce it differ in the time of their origin. The obligation for performance arises upon the making of the contract and operates anterior to the performance. The remedy for the breach of a performance cannot exist prior to the breach, and then operates to enforce the pre-existing obligation."

It is clear from the foregoing cases that neither Section 516.120 RSMo 1959 nor any other statute of limitations commences to run until the obligation to pay arises. Under the express terms of the ordinance the tax bills in question did not become "due and payable" until thirty days after their issue. Since the parties have stipulated that the tax bills in ques-

tion were issued October 10, 1961 and that this suit was filed November 9, 1966, it is clear that this suit was filed within five years after thirty days after the date of issue, and thus the ruling of the trial court was correct.

Appellant's remaining point is that "the judgment of the trial court should be reversed because the court erred in finding in favor of plaintiff since the lien plaintiff sued to foreclose expired five years after its creation and before plaintiff instituted this action."

The reasoning which points to the correctness of the trial court's ruling on this contention is very similar to that appearing in our discussion of Point I. If one assumes that plaintiff's "fundamental analysis of the cause of action asserted by plaintiff", as stated in appellant's brief, is correct then this cause of action is an action in rem to foreclose a lien against appellant's real estate. It follows, therefore, that no cause of action could have been asserted by respondent against appellant prior to November 10, 1961. The reason for this is readily apparent. Chapter 14, Section 41 of the Revised Ordinances of Columbia which is the ordinance provision which implements Article IX, Section 79 of the charter of Columbia which authorizes the issuance of special tax bills states that:

"All special tax bills shall bear no interest for thirty days after the date of issue thereof, at which time such tax bills shall be due and payable."

It was stipulated that the date of issue of the special tax bills was October 10, 1961, therefore, under the express provision of the ordinance quoted immediately above, these bills did not become "due and payable" until thirty days thereafter or November 10, 1961. Since no cause of action could be brought to enforce these tax bills prior to the time the same became "due and payable", St. Louis County ex rel. Scott v. Marvin Planing Mill Company, *supra;* State ex rel. Collector of Revenue of City of St. Louis v. Robertson, *supra,* neither respond-

ent nor respondent's predecessors in interest had an enforceable lien as a result of these tax bills until November 10, 1961. As stated in St. Louis County ex rel. Scott v. Marvin Planing Mill Company, *supra*:

> "A reasonable construction of the statute in question leads inevitably to the conclusion that it was the intention of the Legislature to do both of these things, namely, to provide for the creation of a lien beginning as of the date of the issuance of the special tax bill, and to *suspend the enforcement of such lien for a period of thirty days thereafter during which period no interest should accrue.*" (Emphasis added)

There is nothing in the ordinance before us which cannot be reconciled with the interpretation of requiring an *enforceable* lien of five years' duration, and as a matter of fact other language found therein suggests such an interpretation. Section 79 of Article IX of the Charter of Columbia contains the following language:

> "Such tax bills *mature* at such times and bear such rate of interest as may be prescribed by the ordinance directing the issuance thereof * * *."

and Chapter 14, Section 41 of the Revised Ordinances of Columbia, in referring to the installment payment provisions states:

> "* * * tax bills payable in installments as herein specified, the lien of which shall not expire until one year after the date of *maturity* of the last mentioned installment."

Both the Charter provision and the ordinance provision quoted above refer to the "maturity" of the lien. The St. Louis Court of Appeals in another tax bill case, Eyermann v. Stevens, 185 Mo.App. 168, 170 S.W. 330, 1. c. 331, has defined "maturity" in the following manner:

> "It appears too clear to leave room for dispute that by the word 'maturity,' as thus used, is meant the time when an installment shall become due and payable."

It follows then as a matter of course that since the lien of the special tax bill does not mature for thirty days after its issuance, that either the special tax bill becomes a lien upon its issuance, and the enforcement thereof is suspended for thirty days or that the special tax bills do not become a lien until thirty days after their issuance; but in either case, since it was stipulated that the special tax bills were issued October 10, 1961, the five-year lien thereof did not expire until November 10, 1966; and that therefore this suit to foreclose the lien filed November 9, 1966, was timely filed. There is a logical basis for either theory, and the difference between the theories is more apparent than real as both carry out the obvious intent of the Charter and the ordinance.

The more logical interpretation is that the special tax bills become a lien upon the real estate upon issue, that the lien matures thirty days thereafter when the special tax bill becomes due and payable and that said lien continues for five years thereafter. This theory is analogous to a tolling provision under a statute of limitations which has the effect of extending the period of limitation beyond that which the statute clearly states by *that amount of time for which enforcement of the right was suspended.* See Cobb v. Houston, 117 Mo. App. 645, 94 S.W. 299, which holds that such extension of the limitations is part of the common law independent of statute.

The foregoing interpretation is not only a means of reconciling the Charter provision with the two ordinance provisions in question and the language of the tax bill themselves, but it is also the only way that the provisions of Section 79 of Article IX of the Charter of Columbia can be internally reconciled. That section provides both that "When said ordinance is approved, the tax bills authorized thereby shall become a first lien * * *" and that "Such tax bills shall mature at such times * * * as may be prescribed by the ordinance * * *." It follows therefore that if, as appellant contends, the five-year period

were measured from the time the bills first became a lien, then this provision concerning the maturity of the lien would be internally self-contradictory since the respondent either had an enforceable lien on October 10, 1961, or it did not. Since interest on the special tax bills did not begin to accrue until November 10, 1961, and the ordinance provided "All special tax bills shall bear no interest for thirty days after the date of issue thereof * * *" it is clear that the special tax bills did not "mature", Eyermann v. Stevens, *supra*, until November 10, 1961, and that since enforcement of the lien was suspended until that date, St. Louis County ex rel. Scott v. Marvin Planing Mill Company, *supra*, an enforceable lien of five years' duration commenced on that date. Since such a lien would expire, by definition, on November 10, 1966, this action which was filed on November 9, 1966, was timely filed.

The judgment should be affirmed. Your Special Commissioner so recommends.

PER CURIAM:

The foregoing opinion by BROADDUS, Special Commissioner, is hereby adopted as the opinion of the Court and the judgment is affirmed. All concur.